The opinion of the court was delivered by
Gibson, J.
Many of the errors assigned have been abandoned, and of those that remain, I shall notice only such as are connected with the merits.
The case is this. By a conveyance from a person, who had purchased at sheriff’s sale, a certain Alexander Brotan became the owner of two adjoining tracts of land, the one held by location, the other by improvement, both being described in the sheriff’s deed by particular boundaries, and as containing a certain number of acres. Alexander Brown conveys this last tract (the improvement tract,) substantially by the boundaries contained in the sheriff’s deed, and in the deed to himself, but as containing 200 instead of 300 acres, (the quantity mentioned in the sheriff’s deed,) to Benjamin Brown, who afterwards sells to Miller. Alexander Brown subsequently conveys the location tract to Smith, (the defendant’s father,) together with the sheriff’s deed for the improvement tract, as containing 300 acres, deducting 200 acres before sold to Benjamin Brown. On surveying the improvement tract, it is found to contain more than 200 acres, and less than 300, and that to lay off 200 acres according to the boundary called for on the northern side, (the side furthest from the location tract,) would exclude the improvements by which the tract is held; and under a supposition, that only 200 acres, and not the tract, had been conveyed to Benjamin Brown, it is agreed between, Smith standing in the place of Alexander Brown, Benjamin Brown, and Miller, who purchased from him, that the 200 acres should be laid off on the side next the location tract; thus leaving out the land in dispute: and for the privilege of doing this, Benjamin Brown agrees to assign to Smith one of the bonds due to him by Miller, for fifty pounds. The defendant claims the residue of the improvement tract under the sheriff’s deed, and under this agreement. Now it is evident, the agreement arose from the common error of all parties, in supposing, that Benjamin Brown was the owner of a part, and not the whole of the improvement tract. When the land was levied and sold at sheriff’s sale, the quantity was not known, and *265 this improvement tract was described in the levy, and in the sheriff’s deed, by particular boundaries,.and as containing 300 acres ; and when it is sold by Mexander Brown to Benjamin Brown, it is described in the conveyance by the same boundaries, but as containing only 200 acres. On actual measurement, it is found to contain more than 200, but less than 300 acres. In all the conveyances, therefore, the quantity, as it most usually is, was only matter of description: it was the tract, and not any particular number of acres, which was the subject of the grant; and the whole passed to Benjamin Brown, and from him to Miller. Under these circumstances, Smith could derive no title from the agreement. Benjamin Brown had assigned to him, a bond of fifty pounds, for what ? For the privilege of including a part of his own land in his survey, and of throwing another part of it away, which he might just as veil have retained. This is the land in dispute: and al though the exclusion of it is such a designation of boundary as will preclude any one holding under Benjamin Brown or Miller, from claiming it against a person who may have subsequently acquired title to it from the Commonwealth, still it can give no title to Smith, or any one claiming under him, because his conveyance of the sheriff’s deed, by Mexander Brown, passed no interest in any part of the improvement tract, the whole of which had before been conveyed by Mexander Brown to Benjamin Brown. The case then, of a parol substitution of one part of a tract, for another that had been conveyed, which it is contended, would ipso facto re-vest the part on which the conveyance had first operated, was not before the jury; and if there was any misapprehension of the law which would arise out of such a case, it is not the subject of error here. In this view of the case, therefore, it is manifest, that the effect of want of possession by Smith, or of any supposed abandonment, or of Judge Oliver’s acts in relation to the transaction in regard of the fifty pounds bond, is entirely out of the question: the defendant had shown no title under the conveyance of the sheriff’s deed from Mexander Broion, or under the agreement with Miller and Benjamin Brown.
But the plaintiff could recover only on the strength of his own title, which is said to be defective. He claimed by an improvement that was made after a warrant had been taken out in his name by his father. This warrant, it is conceded on all hands, was absolutely void, in consequence of its having issued after the passing of the act of the 22d of September, 1794, without being founded on a previous settlement: and it is contended, that the subsequent improvement having been made in prosecution of an illegal title, can give no right. There is no force in this. The warrant was merely void, and there was nothing criminal, or even immoral in taking it out. The object could not have been fraudulent; for without reciting a previous settlement,, a warrant issued at this time, would be altogether inoperative, and the plaintiff did not pretend, *266 that this warrant was founded on a settlement. There is, therefore, no colour to say, he might not afterwards enter on the land as an improver. The improvement, however, was made by a tenant, who entered under a lease from the plaintiff’s father; and the latter is, therefore, said to be the real owner. If the fact be so, it is a bar to the plaintiff’s recovery. On this part of the case, the judge directed the jury, that “ admitting the plaintiff to be a trustee for his father, the action might be sustained in his name.” This, as an abstract position, is undeniable; but in reference to the circumstance which were in evidence, it had a direct tendency to mislead the jury, by withdrawing their attention from the consideration of the question, whether the father or the son were the owner of the land. How could the plaintiff be a trustee? A trustee is always seised of the legal estate; and if the matter had stood on the warrant and survey, which, as to third persons, is a legal title, all might have been well enough; but that rvas conceded to be absolutely void. An improvement right is a mere equity, the commonwealth being seized in trust for the improver: and strictly speaking, she cannot be seized to the use of A. in trust for B. The judge seemed to think, that the warrant, although void for the purpose of conferring title, might operate as a declaration, as to whose use the entry was, which was made for the purpose of commencing the settlement, and so indeed it might, as a circumstance before the jury, although it would be far from conclusive; but it could have no operation in law, to show that the son was the owner, much less, to give colour of legal title, so as to enable him to be a trustee. If he was the owner of the improvement, he was so to every intent: if he was not, he should not have recovered. Putting the case to the jury then, on a supposition, which was impossible, was an error, for which the judgment is reversed: but we are of opinion, that no other exception has been sustained.
Judgment reversed, and a venire de novo awarded.